25-3100
*Youngpoong Corp. v. PedalPoint Holdings*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 22nd day of April, two thousand twenty-six.

PRESENT:
ROBERT D. SACK,
DENNY CHIN,
RICHARD J. SULLIVAN,
*Circuit Judges*.

---

IN RE: APPLICATION OF YOUNGPOONG CORPORATION *for an order pursuant to 28 U.S.C § 1782 to conduct discovery for use in foreign proceedings*.

---

YOUNGPOONG CORPORATION,

*Applicant-Appellee*,

v. No. 25-3100

PEDALPOINT HOLDINGS, LLC, KEVIN HAHM, JANET HA,

*Respondents-Appellants*.

---

**For Applicant-Appellee:** MATTHEW S. HELLMAN (Brian J. Fischer, Jason P. Hipp, Benjamin D. Alter, Jenner & Block LLP, New York, NY, *on the brief*), Jenner & Block LLP, Washington, D.C.

**For Respondents-Appellees:** WILLIAM B. ADAMS (Nicholas J. Caluda, Quinn Emanuel Urquhart & Sullivan, LLP, Houston, TX, *on the brief*), Quinn Emanuel Urquhart & Sullivan, LLP, New York, NY.

Appeal from orders of the United States District Court for the Southern District of New York (Jeannette A. Vargas, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the July 2, 2025, July 16, 2025, and November 19, 2025 orders of the district court are **AFFIRMED.**

PedalPoint Holdings, LLC, and its officers (collectively "PedalPoint"), appeal from the district court's orders (i) granting the application of Youngpoong Corporation to take discovery from PedalPoint in the United States, and (ii) denying PedalPoint's motion to quash Youngpoong's subsequently issued

subpoenas, which the district court issued pursuant to 28 U.S.C. § 1782. Under that statute, district courts may compel third parties to produce evidence "for use" in foreign litigation "upon the application of any interested person." 28 U.S.C. § 1782(a). Invoking this authority, Youngpoong sought documents and testimony from PedalPoint, a U.S.-based subsidiary of a South Korean company called Korea Zinc, whose directors Youngpoong is suing in Seoul, South Korea. We assume the parties' familiarity with the facts, procedural history, and issues on appeal, to which we refer only as needed to explain our decision.

We review both a district court's "decision to order discovery" under section 1782, *Banoka S.a.r.l. v. Elliott Mgmt. Corp.*, 148 F.4th 54, 64 (2d Cir. 2025) (internal quotation marks omitted), and its "ruling on a motion to quash a [section 1782] subpoena . . . for abuse of discretion," *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 79 (2d Cir. 2012) (internal quotation marks omitted). "Congress planned for district courts to exercise broad discretion" when it comes to the "issuance of discovery orders pursuant to [section] 1782(a)." *In re Edelman*, 295 F.3d 171, 181 (2d Cir. 2002).

In determining whether to assist foreign litigants under section 1782, a district court follows a two-step process. *First*, it must determine whether the

section 1782 application has met the statute's baseline requirements, meaning that "(1) the person from whom discovery is sought resides (or is found) in the district[,] (2) the discovery [is] for use in a proceeding before a foreign tribunal, and (3) the application [was] made by . . . an[] interested person." *Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 117 (2d Cir. 2015) (internal quotation marks omitted). *Second*, the court must consider the discretionary factors that the Supreme Court articulated in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004).

Because PedalPoint concedes that Youngpoong's section 1782 application checks all the statutory boxes, the fate of its appeal depends entirely on the *Intel* factors, which include: (1) whether the "evidence is sought from a nonparticipant in the matter arising abroad" such that the "evidence . . . may be unobtainable absent [section] 1782(a) aid"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the [foreign] court . . . to U.S. federal-court judicial assistance"; (3) "whether the [section] 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether that request is "unduly intrusive or burdensome."

*Id.* at 264–65. Here, PedalPoint does not dispute that the second and fourth *Intel* factors favor Youngpoong's section 1782 application. We therefore consider only the first and third factors.

## I. The First *Intel* Factor Favors Youngpoong's Application.

PedalPoint argues that the district court erred by evaluating the first factor under a rigid two-step test; in PedalPoint's telling, the district court (i) "erroneously began its analysis by narrowly considering" only whether PedalPoint was officially a "part[y] to the Korean shareholder lawsuit" – which it indisputably is not – and (ii) compounded that error by concluding that such nonparticipants may quash section 1782 subpoenas *only* if they are serving as document custodians for the actual parties to the foreign suit, which PedalPoint also is not. PedalPoint Br. at 13. PedalPoint contends that the district court thus failed to focus on the true essence of the first *Intel* factor, which is not the status of the subpoena target, but rather "whether the documents or information sought can be obtained in the foreign proceeding." *Id.; see Frasers Grp. PLC v. Stanley*, 95 F.4th 54, 59 (2d Cir. 2004) (explaining that "the first *Intel* factor [may] weigh[] against relief even where the discovery target [is] not a party to the foreign proceeding").

But PedalPoint mischaracterizes the district court's order, which expressly acknowledged that "[t]he Second Circuit has at times . . . broadened the scope of the first *Intel* factor to consider not just whether the subject of the [s]ection 1782 application is a nonparticipant in the foreign proceeding, but whether the information that the [s]ection 1782 application seeks is obtainable from the opposing party in the foreign proceeding." Sp. App'x at 20 (citing *Frasers Grp.*, 95 F.4th at 58–59). The court then explained that (i) PedalPoint "presumably independently owns" relevant documents (copies of which Korea Zinc might not have); and (ii) it was "unclear how [Youngpoong] could possibly obtain the kind of information that deposition testimony" could provide "without [s]ection 1782 aid." *Id.* at 20–21. That careful analysis hardly resembles the inflexible series of bright-line pronouncements that PedalPoint describes.

To avoid this problem, PedalPoint also argues that much of the evidence at issue would not be "relevant and admissible in th[e] [Korean] lawsuit." Reply Br. at 8. But we have never required courts assessing the first *Intel* factor to guess at the ultimate viability of evidence. Although the evidence's admissibility in a foreign court might affect *other* stages of the section 1782 analysis, *see, e.g.*, *Certain Funds*, 798 F.3d at 120 n.7 (noting that "relevance" could influence the statutory

"for-use-in-a-foreign-proceeding" criterion); Reply Br. at 11 (conceding that "admissibility already plays a role in the third *Intel* factor"), the first *Intel* factor turns only on whether the "evidence is sought from a nonparticipant in the matter arising abroad," who "may be outside the foreign tribunal's jurisdictional reach," *Intel*, 542 U.S. at 264. Because that is true here, we conclude that the district court did not abuse its discretion. *Cf. Fund for Prot. of Inv. Rts. in Foreign States Pursuant to 28 U.S.C. § 1782 for Ord. Granting Leave to Obtain Discovery for use in Foreign Proc. v. AlixPartners, LLP*, 5 F.4th 216, 231 (2d Cir. 2021) (explaining that "the foreign tribunal" – not the U.S. court – may decide in due course whether "to exclude the evidence or place conditions on its admission" (internal quotation marks omitted)), *rev'd on other grounds sub nom. ZF Auto. US, Inc. v. Luxshare, Ltd.*, 596 U.S. 619 (2022).

## II. The Third *Intel* Factor Favors Granting Youngpoong's Application.

PedalPoint next argues that the district court erred in concluding that the third *Intel* factor favors granting Youngpoong's section 1782 application. According to PedalPoint, Youngpoong's application is designed "to circumvent discovery and use limitations in Korea" and was thus "made in bad faith" and "for the purpose of harassment." PedalPoint Br. at 17 (internal quotation marks omitted). But rather than present actual evidence of active circumvention, *see Fed.*

*Republic of Nigeria v. VR Advisory Servs., Ltd.*, 27 F.4th 136, 153 (2d Cir. 2022) (noting that "circumvention occurs where the applicant uses a [section] 1782 application to avoid measures that are *intended* to restrict certain means of gathering or using evidence"), PedalPoint instead argues that the district court erred *legally* because (i) Korean privileges *might* protect "certain documents," *id.*; (ii) the district court incorrectly required PedalPoint to "produce 'authoritative proof'" that such privileges applied, *id.* at 18, and (iii) it should instead have reviewed the scope of these privileges as a garden-variety issue of law – with no burden on either party – because "U.S. courts commonly answer foreign[-]law questions," Reply Br. at 14.

We need not decide whether the district court improperly required "authoritative proof" because PedalPoint has failed to show – under any standard – that Korean law shields the evidence requested here. Indeed, PedalPoint's *own expert* conceded that she "c[ould not] determine with certainty that any specific request in the document subpoena" sought privileged documents. Sp. App'x. at 23 (internal quotation marks omitted). That concession dooms PedalPoint's challenge; we cannot conclude that Youngpoong requested section 1782 aid in a "bad[-]faith" effort to circumvent Korean privilege rules, PedalPoint Br. at 17 (internal quotation marks omitted), simply because PedalPoint's hired expert

vaguely explained that there was a potential (but uncertain) "risk" that some of the evidence that Youngpoong sought might turn out to be privileged under Korean law, Sp. App'x at 23 (internal quotation marks omitted).

We have expressly instructed district courts to *allow* discovery when the record does not establish whether an asserted foreign-law privilege applies. *See In re Application for an Ord. Permitting Metallgesellschaft AG to take Discovery*, 121 F.3d 77, 80 (2d Cir. 1997) ("To require the district court to determine such a[] [foreign-privilege] issue would involve it in a speculative foray into legal territories unfamiliar to federal judges." (alteration adopted and internal quotation marks omitted)). We have also discouraged district courts from allowing "battle[s]-by-affidavit of international legal experts," because "[s]uch a costly, time-consuming, and inherently unreliable method of deciding section 1782 requests cannot possibly promote the twin aims of the statute" – namely, "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Euromepa S.A. v. Esmerian, Inc.*, 51 F.3d 1095, 1097–1100 (2d Cir. 1995) (internal quotation marks omitted).

Thus, even if "authoritative proof" is not the correct standard, section 1782 respondents must still – at the very least – present clearer evidence of a foreign-law privilege than their own expert's noncommittal affidavits.[1] *See Metallgesellschaft*, 121 F.3d at 80 ("[W]e will not speculate – particularly on the basis of an ambiguous affidavit – [about] whether [a party] enjoys a privilege under [foreign] law.").

* * *

We have considered PedalPoint's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the orders of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court.

---

[1] PedalPoint relies on *Federal Republic of Nigeria v. VR Advisory Services, Ltd.*, for the proposition that the scope of foreign privileges always presents a pure question of law. *See* PedalPoint Br. at 18 (citing 27 F.4th at 136). But *VR Advisory* involved a U.S.-Nigeria treaty, *see* 27 F.4th at 152 – the kind of bread-and-butter legal text whose "meaning" federal courts must "determin[e] . . . as a matter of federal law," *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 353–54 (2006). That is a far cry from this case, which involves parsing the intricacies of the Korean Civil Procedure Act.